Present: All the Justices

CATHY A. STUMP, ADMINISTRATRIX, ETC.

v. Record No. 941052          OPINION BY JUSTICE HENRY H. WHITING
                                          June 9, 1995

JOHN DOE

                 FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                              Roy B. Willett, Judge


     In this wrongful death case, we decide whether the evidence
is sufficient to support a jury verdict for the plaintiff.  Even
though the trial court set the verdict aside, we state the facts
and reasonable inferences to be drawn therefrom in the light most
 favorable to the plaintiff, who prevailed before the jury.
Griffett v. Ryan, 247 Va. 465, 467, 443 S.E.2d 149, 150 (1994).
And "if there is any credible evidence in the record that
supports the verdict, we must reinstate that verdict and enter
judgment thereon."  Id.

     While returning to Virginia from a trip to Alabama on
September 28, 1986, Luther J. Garst, Jr., (Garst) was driving his
Chevrolet Suburban, which was towing a 22-foot camping trailer,
on Interstate Highway 81 (I-81) in Wythe County.  Five passengers
were seated on the three tiers of seats of the Suburban, a large
station wagon.  As a tractor-trailer overtook and passed Garst,
he lost control of his vehicles and they overturned in the median
strip, killing Garst's daughter, Jennifer Elaine Garst, a
passenger in the Suburban.

     Since the driver of the tractor-trailer did not stop at the
scene, his identity and that of the tractor-trailer's owner are
unknown.  Cathy Ann Garst Stump, Jennifer's sister, qualified as

administratrix of Jennifer's estate and brought this wrongful death action against John Doe, the unknown defendant.  Process was served upon Virginia Farm Bureau Mutual Insurance Company, Garst's motor vehicle liability carrier, and it defended this action.

Garst, a driver with over 20 years' experience in driving vehicles pulling horse trailers and campers, testified that just prior to the accident, he had been driving at a speed between 50 to 55 miles per hour in the left lane of the two northbound lanes of I-81.  As Garst got to the bottom of a hill, he noticed a tractor-trailer "coming right fast" in the right lane, and "about the time that the tractor-trailer got to the rear of the camper, [he] felt the wind force pushing the camper."

As Garst felt the wind force push the camper to its left, the front of the Suburban was also forced to its left.  This caused both vehicles to begin "swinging."  Garst unsuccessfully tried to stop the "swinging" by turning the Suburban slightly back to the right and applying both vehicles' brakes.  Then Garst applied the trailer brakes and accelerated the Suburban, but the more corrective action he took, "the worse everything got." Garst testified that "then, all of a sudden, everything went around, and that's the last thing I remember."

Mark Douglas Reynolds, a passenger in the right middle seat of the Suburban, testified that as Garst was driving the Suburban at a speed of "around 50 miles an hour" at the bottom of the

hill, a tractor-trailer came by them at a speed of "about 70 miles an hour," so close that "if I rolled the window down, I could have touched the trailer."  According to Reynolds, as the tractor-trailer was passing, the camper trailer "[i]mmediately" started to sway, and Garst "started to follow the sway of the camper to try to gain control, because we started at that point zig-zagging back and forth through the lanes."

Describing the further movements of the vehicles, Reynolds testified that:

> The camper jackknifed.  When it jackknifed, it flipped us around in the road.  The camper broke loose from the Suburban.  And, at that point, we spun around in the road a few more times. . . .
>
> We then hit the median strip.  And, when we hit that, we started down the embankment straight.  But, then the camper flipped over on its side, and we rolled side to top to bottom to top and rolled all the way down going back up on the other side of the hill.

Walter A. Johnson, who had made government-funded studies of the wind forces from tractor-trailers and their effects on other vehicles on the highway, qualified as an expert witness in the field of automobile and tractor-trailer aerodynamics.  Johnson testified about the effect of such wind forces upon a vehicle being passed by a tractor-trailer.

According to Johnson, the front of a tractor-trailer pushes the air out of its way as it proceeds down the highway, creating a "bulging out of the wind [which] is referred to as a bow wave.  It is much the same as a bow wave of a boat going through the water."  At the aft, or rear end, of the tractor-trailer, the air

is sucked back in behind the vehicle.  As the bow wave progresses along the side of the overtaken vehicle, the wave's force pushes on those parts of the overtaken vehicle closest to that force, and as the rear end of the tractor-trailer passes the other vehicle, the force of the suction pulls on the parts of the overtaken vehicle closest to its force.  Johnson testified that the bow wave and suction forces grow disproportionately at higher speeds and closer proximities between the vehicles.

The defendant moved to strike the plaintiff's evidence at the conclusion of her case.  When that motion was overruled, the defendant presented no evidence and renewed his motion, which was again overruled.  After instructions and argument, the jury returned a verdict in favor of the plaintiff and the statutory beneficiaries in the total sum of $153,009.20.  On defendant's motion, the trial court set the verdict aside on the grounds that (1) the accident was not reasonably foreseeable by the defendant, and (2) the plaintiff had failed to prove that the defendant's negligence was a proximate cause of Garst's loss of control of his vehicles.  The plaintiff appeals.

Noting Garst's testimony that during his trip to and from Alabama on interstate highways, he had been passed without incident at least 100 times by tractor-trailers which were traveling from 5 to 15 miles an hour faster than he was, the defendant argues that this was an "unfortunate freak accident." Hence, the defendant concludes that he could not reasonably

foresee that his operation of the tractor-trailer would cause Garst's vehicles to be "blown off the road." We disagree.

Contrary to the defendant's contention, the jury was not required to find that he should have foreseen that his operation of the tractor-trailer would cause the Garst vehicles to be "blown off the road." Here, the evidence of the defendant's excessive speed and close proximity to the Garst vehicles, coupled with Johnson's testimony of the effect of the wind turbulence produced thereby, made it reasonably foreseeable that this turbulence might cause Garst to lose control of his vehicles. And, in our opinion, the defendant need not have anticipated the precise consequence of Garst's loss of control. Hence, we think that the trial court erred in holding that the defendant could not have reasonably foreseen the consequences of his conduct.

Next, we consider the defendant's claim that, as a matter of law, his negligence was not a proximate cause of Jennifer's death. The defendant relies primarily upon this Court's decision in Colonial Motor Freight Line, Inc. v. Nance, 216 Va. 552, 557, 221 S.E.2d 132, 135 (1976). There, the plaintiff introduced evidence of the effect of the bow wave and suction forces of a large tractor-trailer upon overtaken vehicles similar to that in this case. The plaintiff in Nance was driving a car towing a camping trailer and successfully claimed in the trial court that the defendant's tractor-trailer passing her at a high rate of

speed caused her to lose control of her vehicles and to overturn. We reversed a judgment for the plaintiff, holding that she failed to establish a causal connection between the passing of the tractor-trailer and her loss of control, since she did not claim that she lost control while being passed by the defendant's tractor-trailer. Rather, she testified that it was _after_ the rear of the tractor-trailer was in front of her car that her trailer swerved. _Id._ at 554-55, 221 S.E.2d at 134. Here, in contrast, Garst and Reynolds testified that both vehicles were affected by the wind turbulence created by the defendant's tractor-trailer _while_ it was passing them.

In our opinion, this evidence, coupled with the other evidence, including Reynolds's testimony of the speed and proximity of the tractor-trailer, was sufficient to create a jury issue whether the defendant's conduct was a proximate cause of Garst's loss of control of the two vehicles. Accordingly, the trial court erred in setting aside the verdict on this ground.

Since our decision upon the above rulings of the trial court is dispositive, we do not consider the plaintiff's remaining assignments of error.

In an assignment of cross-error, the defendant contends that the trial court should have set the verdict aside for the additional reason, viz., the following remarks in plaintiff's closing argument in support of a suggestion that the jury award $100,000 to each of the statutory beneficiaries:
        Several years ago a couple of whales got stuck in

the ice up in Alaska, and our government and the
Russian government spent three million dollars to save
two whales that were stuck in the ice.

Upon the defendant's objection, the trial court correctly held that this was improper argument and told the jury to disregard it.  Since the court took prompt and appropriate action to remove the plaintiff's improper statement from jury consideration, we presume that the jury heeded the court's instruction.  Here, the defendant has failed to overcome that presumption.  Therefore, we reject this contention.

Since we conclude that the factual issues were properly submitted to the jury, we will reverse the judgment of the court and enter final judgment for the plaintiff.

Reversed and final judgment.

CHIEF JUSTICE CARRICO, dissenting.

I dissent because I think the outcome of this case should be controlled by this Court's earlier decision in Colonial Motor Freight Line, Inc. v. Nance, 216 Va. 552, 221 S.E.2d 132 (1976).  The majority attempts to distinguish Nance, but I see no principled difference between the two cases and, observing the rule of stare decisis, would hold here, as we held in Nance, that the plaintiff failed to prove causation.  Accordingly, I would affirm the judgment of the trial court.