# CIRCUIT COURT OF THE CITY OF NORFOLK

Beth Burnell

v.

John Doe

November 13, 1995

Case No. (Law) L94-4787

BY JUDGE CHARLES E. POSTON

For the reasons stated below, the Court will grant the motion for summary judgment filed by Nationwide Mutual Insurance Company on behalf of John Doe. Because no transcript of the *ore tenus* hearing on Monday, November 6, 1995, is available, I shall provide a detailed statement of facts.

The facts presented during the *ore tenus* hearing are not in dispute. During the early afternoon of April 27, 1994, the plaintiff, Beth Burnell, was driving her white Chevrolet Blazer eastbound on Interstate 264. She entered I-264 from the City Hall Avenue access ramp at the origin of the eastbound lanes. Interstate 264 eastbound originates in the City of Norfolk at the point of convergence of access ramps from City Hall Avenue, Waterside Drive, and the Elizabeth River Bridge/Tunnel.

Burnell travelled up the ramp behind a 1989 Ford pick-up driven by Mark Hudson. As he entered the access lane to Interstate 264, which gave entry onto the far left lane of the highway, Hudson noticed an object which appeared to be a piece of cardboard in the left lane. There was about one foot of space between the left side of the lane and a metal guard rail, and oncoming traffic blocked Hudson's access to the lane to his immediate right. He had no choice but to drive over the object which later proved to be a blue blanket. Some seconds later, he heard a crunching sound under his vehicle which immediately

began to slow down. His vehicle came to a complete stop, and he was unable to make it move. Burnell crashed into Hudson's rear, and the force of the impact pushed his vehicle into the guard rail.

Just before the collision, Elizabeth A. Kessler had entered the highway from Waterside Drive which provided access from the right side of the highway. She noticed one or two thirty-gallon trash bags on the right shoulder. These bags appeared to be full and closed. Kessler also saw a blue blanket on the road. Although she did not actually see Hudson drive over the blanket, she did see a "puff of shredded" blue material come from the rear of his truck. Kessler later saw the blanket under Hudson's truck. However, Kessler had no knowledge of how the blanket became positioned on the road nor the source from whence it came.

James W. Simpkins, Jr., was also entering Interstate 264-eastbound at the time of the accident. He was approaching from the Elizabeth River Bridge/Tunnel and entered the highway in its middle lane. He fell in behind Burnell's vehicle and saw the collision. Just before the accident occurred, he saw broken pieces of wood on the highway which looked as if they had come from a broken shipping pallet. He also saw paint cans and rags, all of which, he thought, looked like construction material. Some of this material was on the right shoulder. He, too, saw a blanket in the left lane but did not see Hudson drive over it. Simpkins had no indication of the source of the blanket nor how it came to rest on the highway.

Trooper Jeffrey A. Overbeck of the Virginia State Police was dispatched to the accident scene and arrived in a marked vehicle at 1:54 p.m. He approached the accident from the highway's westbound lane. Overbeck described the highway as having three lanes in each direction with the eastbound lanes divided from the westbound lanes by a metal guardrail.

The collision was a violent one (Plaintiff's Exhibits 2, 3 and 4). Burnell's vehicle came to rest on its right side. Due to the damage to the left side, a hole was cut in the roof so that rescue personnel could extract Burnell (Plaintiff's Exhibit 3). It is obvious from the pleadings that she suffered extensive and serious injury requiring lengthy treatment and recuperation.

In the course of his investigation, Overbeck determined that a blue blanket had tightly wrapped around Hudson's drive shaft, causing it to break at the universal joint. The drive shaft was actually touching the ground. (Plaintiff's Exhibits 5 and 6.) Overbeck found no one who could tell him how the blanket got onto the road or how long it had been there.

During the *ore tenus* hearing, the plaintiff offered William J. Schmidt, a civil engineer, as an expert witness. While not conceding that Schmidt's testimony would be admissible at trial, the defense interposed no objection to

his qualifications or testimony for purposes of the summary judgment motion. Schmidt has had extensive experience in Virginia and other states in the design and construction of highways.

Schmidt had visited the scene of the accident in September 1994, and had reviewed the following documents: police accident report and police photographs of the accident; aerial photographs of the accident site; discovery depositions of several witnesses; and state highway construction and right-of-way drawings of Interstate 264 for the scene of the accident. He also heard the testimony of Hudson, Kessler, Simpkins, and Overbeck. He had also researched the weather reports of the date and time of the accident to exclude the possibility of high winds.

Based on his research, Schmidt testified that the *only* conclusion one could reach was that the blanket came from a vehicle because it was not properly tied down. On cross-examination, he conceded that there were other possibilities and said, "Anything is possible." When asked why he concluded that the blanket fell off a vehicle because it was improperly tied down, Schmidt replied, "Because it fell off." He also agreed that the blanket could have been properly tied down and fell off because the fasteners failed.

Plaintiff has the burden of proving that an unknown motorist, John Doe, was present at some point *and* that his negligence proximately caused the collisions. *John Doe v. Houser*, 213 Va. 617, 619 (1973). Since no one saw "John Doe" and since there is no first-hand explanation of how the blanket came to rest on the road, the plaintiff must of necessity resort to circumstantial evidence.

Professor Charles Friend offers the following definition of circumstantial evidence:

> Circumstantial evidence, sometimes called indirect evidence, is evidence of facts or circumstances not in issue from which facts or circumstances in issue may be inferred. Friend, *The Law of Evidence in Virginia*, 4th ed., § 12-1.

This type of evidence alone may support a verdict in a civil case, and the finder of fact determines the weight to be given circumstantial evidence. Friend, § 12-2. However, the finder of fact "must be satisfied with proof which leads to a conclusion with probable certainty where absolute certainty is impossible." *Chase v. Breit*, 226 Va. 102, 104 (1983). Further, a verdict cannot be based upon speculation and conjecture, nor can negligence be presumed from the mere happening of an accident. *John Doe v. Houser*, 213 Va. 617, 619 (1973).

Counsel submitted four cases at the *ore tenus* hearing: *John Doe v. Houser*, 213 Va. 617 (1973); *Chase v. Breit*, 226 Va. 102 (1983); *Lawson v. John Doe*, 239 Va. 477 (1990); and *Stump v. John Doe*, 250 Va. 57 (1995). In *Stump v. Doe*, 250 Va. 57 (1995), a large station wagon towing a 22-foot camping trailer on an interstate highway was passed by an excessively speeding tractor trailer, causing the station wagon's driver to lose control and overturn. One of his passengers was killed. The tractor trailer did not stop, and its driver could not be identified. The station wagon driver testified that he felt the force of wind push the camper to the left as the tractor trailer passed. A passenger testified that, had he rolled down his window, he could have touched the speeding tractor trailer. He also felt the force of the wind upon the station wagon. The plaintiff's theory was supported by an expert witness in the field of automobile and tractor trailer aerodynamics. On these facts, the Supreme Court, citing evidence of the tractor trailer's excessive speed, the close proximity of the vehicles, and the expert testimony, supported the jury verdict.

*Stump* relied on circumstantial evidence to establish negligence. There was direct evidence to establish the presence of a motor vehicle. The expert witness testified about "wind forces from tractor trailers and their effects on other vehicles on the highway." He had conducted government-funded studies on the subject. This was clearly a subject beyond the scope of common knowledge.

In the case at bar, Schmidt, a civil engineer, offered an expert opinion about how the blanket came to rest on the highway. His testimony was at best educated speculation. The finder of fact is just as capable of making that speculation as is an expert. Schmidt's testimony would not be admissible at trial.

*Lawson v. John Doe*, 239 Va. 477 (1990), involved a fatal highway accident. Witnesses living near the accident scene heard noises when the accident occurred and saw a truck pass at a high rate of speed. The investigating officer found a heavy board on the highway. Two rusty nails were embedded in the board. The victim walked into a yard, told the resident, "A car hit me," and collapsed. He died on the operating table. He sustained extensive trauma to the abdomen and pelvic area and scrapes across the abdomen approximately the same width as the thickness of the board found on the highway. The plaintiff's theory of the case was that the victim "was struck by an object extending from the side of the vehicle ... Had he been hit by the vehicle itself, he certainly would have sustained other injuries." *Id.* 480. The Supreme Court, affirming the trial court in setting aside a jury verdict, said:

629

> Unfortunately for the plaintiff, he is left with nothing but conjecture, guess, or random judgment to support his theory of the case. *Id.* 482.

This is the same situation in which the plaintiff here finds herself. There is nothing but speculation to explain how the blanket came to rest on the highway. It is as logical to conclude that a hitchhiker on the way to the beach dropped the blanket as to conclude that it fell from a truck. There are a myriad of other guesses that would be just as logical. The existence of negligence is a subject for even more remote conjectures.

Thus, the Court will grant the defendant's motion for summary judgment.