# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Chaney and White
Argued at Lexington, Virginia


RODNEY RAY ROACH

                                                 MEMORANDUM OPINION[*] BY
v.       Record No. 0588-24-3           JUDGE KIMBERLEY SLAYTON WHITE
                                                   AUGUST 12, 2025

COMMONWEALTH OF VIRGINIA


### FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Shannon T. Sherrill, Judge

S. Scott Baker (Baker Law Firm, PLC., on brief), for appellant.

C. David Sands, III, Senior Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.


On November 17, 2023, Rodney Ray Roach was found guilty by jury of lasciviously soliciting a sex act from a child between the ages of 7 and 18, in violation of Code § 18.2-374.3(D). He was sentenced by the trial court to 5 years' imprisonment, with 4 years and 11 months suspended. Roach appeals, arguing that the trial court erred (1) by denying his motion to dismiss, thereby violating both federal and state constitutional protections against double jeopardy, and (2) by denying his motion to strike the evidence against him because, Roach claims, the Commonwealth failed to prove the requisite lascivious intent for conviction. For the reasons set forth below, we disagree and affirm the decision of the lower court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

*The Mistrial*

On August 18, 2023, Roach's first jury trial began. Following the jury's empaneling, the trial court instructed the jury that nothing the attorneys said during opening statements was evidence. The Commonwealth first made its opening statement. Thereafter, the defense made its opening statement. During his opening statement, defense counsel said of Roach, "He stays to himself. He's a good man. Salt of the Earth sort of guy. And he's never been accused of a sort of crime like this before ever."

Following opening statements, the Commonwealth moved for a mistrial, arguing that defense counsel referred to inadmissible propensity evidence. Roach's trial counsel countered that the court had instructed the jury that anything the attorneys said was not evidence and that he "may" be offering character evidence "that would be along those lines," which would make what he said ultimately admissible. Roach's trial counsel explained that he would do that by having Roach take the stand to answer whether he had ever been accused of a crime before, which the defense contended would be a proper question. To cure any issue, defense counsel suggested that the trial court could remind the jury that anything the attorneys said during opening statements was not evidence.

The trial court remarked that the only way short of a mistrial to cure the issue was to ask the jury to disregard the statement, but doubted that a cautionary instruction would be of any effect. The court disagreed with defense counsel's suggestion of delivering a curative instruction, saying that asking the jury "to assume that the defendant acted in accord with his prior pattern of behavior [was] illegitimate . . . ." Defense counsel had "put the Commonwealth . . . in an untenable position . . . without giving the Commonwealth an opportunity to cross-examine" the statement. The court noted that a problem with telling the jury to disregard it

would be that doing so would "reinforc[e] the fact that the statement was put in [their] minds." The court then declared a mistrial as opposed to giving the cautionary instruction. Defense counsel objected to the mistrial.

*The Retrial—Pretrial Motions*

The court scheduled Roach's retrial for November 17, 2023. Prior to the retrial, Roach filed a motion to recuse and a motion to dismiss. On November 15, 2023, the trial court heard argument on the motion to dismiss. Roach argued that there had been no manifest necessity for a mistrial, asserting that what counsel said was not improper and contended that a curative instruction was a less drastic alternative available, given the "regular[ity]" with which courts use them to cure such issues. The Commonwealth maintained that Roach's trial counsel's opening statement contained improper character evidence.

The trial court held that Roach's trial counsel's statements, "if offered as evidence at trial," "absolutely would [have] be[en] inadmissible." The court found that counsel was trying to elicit negative evidence of a course of conduct and absence of a specific act, not general reputation of a pertinent character trait. The trial court stated that instructing the jury to disregard the comment that the defendant had never been accused before would have "only emphasiz[ed]" the evidence. There was "no way to unring the bell." The court noted that requiring the Commonwealth to object to the statement contemporaneously mid-statement "may have tainted the jury in a more profound way" than waiting for defense counsel to finish and that allowing defense counsel to finish his opening did not prejudice the defendant. The court denied the defense's motion to dismiss, and defense counsel noted his objection.

*The Retrial*

At the retrial, the Commonwealth called four witnesses, including the alleged victim, S.L.S.[1]—Roach's niece. When she was 16 years old, S.L.S testified that she would see Roach on an almost-daily basis and communicate with him through text messages and phone calls. On June 26, 2022, S.L.S. received several text messages from Roach. The Commonwealth focused its case on this text exchange:

[Defendant:]   Are u coming over

[Victim:]   Idk

[Defendant:]   OK

[Victim:]   K

   I forgot to ask mama [if I could come over to see how my grandfather is doing]

[Defendant:]   It be ok

[Victim:]   When are u off

[Defendant:]   I'm home know

[Victim:]   <3

[Defendant:]   Your boyfriend ___ u coming see me lol

[Victim:]   How did u know I have a bf

[Defendant:]   Do u

[Victim:]   Y

[Defendant:]   Ain't old enough for bf

[Victim:]   I'm 16

[Defendant:]   Damn benna hope you ain't sex

---

[1] We use the victim's initials to protect her identity.

[Victim:]        I'm on birth control

[Defendant:]  Damn want have sex with me lol

                   No answer lmao

[Victim:]        No

[Defendant:]  Just joking

                   Are u having sex

[Victim:]        I'm not getting pregnant

[Defendant:]  That's great

[Victim:]        Are u drunk

[Defendant:]  No

[Victim:]        K

[Defendant:]  Why u ask

[Victim:]        Bc

[Defendant:]  Bc why

[Victim:]        Bc

S.L.S immediately told her mother about this text exchange, as she said that Roach had never asked her anything like that before.  Her mother then took her "straight to the police."

Investigator Matthew Vincent testified that he spoke to Roach after advising him of his *Miranda* rights.[2]  Roach verified that the account used to send the messages was his and that he had sent them.  He claimed the messages had been a joke.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Motion to Strike*

Roach moved to strike at the close of the Commonwealth's argument and at the close of all evidence.[3]  He argued that the Commonwealth failed to prove that he possessed the requisite lascivious intent for a guilty finding.

The trial court found that there was nothing "obscure" about the messages.  The trial court noted that the question "do you want to have sex with me" was a question that "sort of st[ood] on its own feet" and "on its face taken in isolation" established intent.  The trial court also found that the discussion about his niece's boyfriend, her being on birth control, and the follow-up message, "no answer," suggesting he had not posed the question rhetorically, supported its finding of intent.  The trial court found that intending it "humorously" would have entailed "a bizarre sense of humor."

The court then denied the motions and noted the defense's objection.  Following closing arguments, the jury returned a unanimous guilty verdict.

ANALYSIS

Roach asserts that the trial court erred first by denying his motion to dismiss.  He argues that the failure to dismiss the retrial violated both his state and federal protections against double jeopardy because there was no "manifest necessity" to order a mistrial of the initial jury trial.  Second, Roach asserts that the trial court erred by failing to strike the evidence against him, arguing that the Commonwealth failed to prove the requisite lascivious intent for his conviction.  We address each argument in turn.

---

[3] Roach did not present any evidence at trial.

*I. The trial court did not err by denying Roach's motion to dismiss, and thus, did not violate Roach's federal and state constitutional protection against double jeopardy.*

The Fifth Amendment of the United States Constitution guarantees that "[n]o person shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[4] "Because jeopardy attaches before the judgment becomes final," courts recognize that the Double Jeopardy Clause protects a defendant's "valued right to have his trial completed by a particular tribunal," and so protects the declaration of a mistrial absent manifest necessity. *Arizona v. Washington*, 434 U.S. 497, 503 (1978). Although the principle of jeopardy attaches in a criminal case once the jury is sworn, *see United States v. Jorn*, 400 U.S. 470, 479 (1971), there are circumstances where the trial court may terminate the already-initiated proceedings and retry the defendant without violating the Double Jeopardy Clause.

The United States Supreme Court has promulgated a two-pronged analysis to determine whether a defendant's protection against double jeopardy has been violated. First, the court must ascertain whether the defendant consented to the trial court's declaration of a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982); *United States v. Dinitz*, 426 U.S. 600, 611 (1976). Absent a defendant's consent to the declaration of a mistrial, the court must determine whether a manifest necessity exists to declare the mistrial. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). Here, Roach did not consent to a mistrial. Thus, the lower court was obligated to find a manifest necessity for declaring a mistrial. We believe it did.

"When a mistrial is declared over a criminal defendant's objection, retrial is permitted only when 'there is a manifest necessity for the act, or the ends of public justice would be defeated.'"

---

[4] The double jeopardy provisions of both the United States Constitution and the Virginia Constitution are coextensive. Virginia has adopted the federal standards as authoritative in interpreting Virginia Constitution article 1, § 8. *Bennefield v. Commonwealth*, 21 Va. App. 729, 739-40 (1996); *see* A.E. "Dick" Howard, *Commentaries on the Constitution of Virginia*, 141-42 (1974).

*Wade v. Hunter*, 336 U.S. 684, 689-90 (1949) (quoting *Perez*, 22 U.S. (9 Wheat.) at 580); *see also*
Code § 8.01-361. Where "manifest necessity compels a mistrial, a retrial does not violate double
jeopardy principles." *King v. Commonwealth*, 40 Va. App. 364, 373 (2003). "A trial court has
'broad discretion' in determining whether manifest necessity requires declaration of a mistrial." *Id.*
"Thus, an appellate court reviews a trial court's invocation of the manifest necessity doctrine and
denial of a motion to dismiss a subsequent indictment only for an abuse of discretion." *Id.*

Although "[t]here is no specific standard by which to determine what facts and
circumstances constitute a 'manifest necessity[,]'" the court will look to see whether "the
objectionable evidence [is] so prejudicial that it probably would remain in the minds of the jury and
influence its verdict even if told to disregard it." *Brandon v. Commonwealth*, 22 Va. App. 82,
90- 91 (1990) (quoting *Turnbull v. Commonwealth*, 216 Va. 328, 335 (1975)). The term
"necessity" cannot "be interpreted literally . . . [because] we assume that there are degrees of
necessity, and we require a 'high degree' before concluding that a mistrial is appropriate."
*Washington*, 434 U.S. at 499, 514-15. "Whether improper evidence is so prejudicial as to require a
mistrial is a question of fact to be resolved by the trial court in each particular case." *Fowlkes v.
Commonwealth*, 52 Va. App. 241, 248 (2008) (quoting *Beavers v. Commonwealth*, 245 Va. 268,
280 (1993)).

To justify a mistrial, the objectionable evidence must be so prejudicial that it probably
would remain in the minds of the jury and influence the verdict, even if told to disregard it. *See
Beavers v. Commonwealth*, 245 Va. 268, 280 (1993) (curative instruction to ignore direct evidence
of premeditation is sufficient where other circumstantial evidence of the same admitted); *Asbury v.
Commonwealth*, 211 Va. 101, 104 (1970) (prompt action to strike answer and instruct jury to
disregard it). When the trial court grants a mistrial, the issue on appeal is whether the judge "acted

responsibly and deliberately, and accorded careful consideration to [the accused's] interest in having the trial concluded in a single proceeding." *Washington*, 434 U.S. at 516.

### A. The statements made by Roach's trial counsel during his opening statement were inadmissible character evidence.

Roach first argues that his trial counsel's statements were "entirely within the realm of trial strategy" and that it was proper for trial counsel to offer character evidence "along the lines of the statement at issue." Roach argues that nothing within the opening statement was improper to the point of making it manifestly necessary to declare a mistrial. This statement Roach's trial counsel attempted to admit, which was mentioned before a jury, however, was inadmissible propensity evidence.

A party may present "negative" evidence of good character through testimony attesting that a defendant has a lack of reputation for a particular trait. *Gardner v. Commonwealth*, 288 Va. 44, 53 (2014); *see Chiles v. Commonwealth*, 12 Va. App. 698, 700 (1991) (stating that "[a] witness may testify that he . . . has never heard that the accused has the reputation of possessing a certain trait). While an accused may introduce character evidence, his ability to do so is limited. *Argenbright v. Commonwealth*, 57 Va. App. 94, 100 (2010); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). Character and reputation evidence may often be "unreliable and incompatible with the objectivity necessary to a fair and just trial." *Gravely v. Commonwealth*, 13 Va. App. 560, 563 (1992). Because of this reality, the delicate distinctions concerning admissible character evidence and the "abuse[s] of hearsay reputation testimony" depend on "subtle considerations" that are reviewed with "difficult[y]" on appeal, as the reviewing court necessarily relies upon a "cold record . . . ." *Michelson v. United States*, 335 U.S.

469, 480 (1948).[5]  As such, appellate courts provide trial courts with "wide discretion" to prevent

the misuse of such evidence, and reversals of a trial court's determination happen "rarely."  *Id.*

While there are certain instances where character evidence regarding the accused's

reputation is admissible at trial, evidence of specific acts, or lack thereof, to prove reputation is

generally never admissible.[6]  Va. R. Evid. 2:608(b); *see Lambert v. Commonwealth*, 70 Va. App.

54, 61-62 (2019).  Our Supreme Court has directly addressed the distinction between inadmissible

propensity evidence and sometimes-admissible reputation evidence, commenting how testimony

that the accused "ha[d] no reputation for violent behavior in the community" was admissible

character evidence, but "never [having] been involved in any criminal activity at all . . . involves

specific acts, or the absence of them, and not the reputation of the defendant."  *Barlow v.*

*Commonwealth*, 224 Va. 338, 339, 342 (1982).  Indeed, as the Supreme Court of the United States

has noted:

> What commonly is called "character evidence" is only such when
> "character" is employed as a synonym for "reputation." . . .  The
> evidence which the law permits is not as to the personality of [the]
> defendant[,] but only as to the shadow his daily life has cast in his
> neighborhood. . . .  [It is] "the slow growth of months and years, the
> resultant picture of forgotten incidents, passing events, habitual and
> daily conduct, presumably honest because disinterested, and safer to
> be trusted because prone to suspect. . . .  It sums up a multitude of
> trivial details[,] . . . the teaching of many incidents and the conduct of
> years.

*Michelson*, 335 U.S. at 477; *see Thomas v. Commonwealth*, 44 Va. App. 741, 756, *adopted upon*

*reh'g en banc*, 45 Va. App. 811 (2005).  While commenting on one's earned and developed

reputation may be of sufficient objectivity, commenting on an accused's criminal history risks a jury

---

[5] While *Michelson* was decided before the adoption of the Federal Rules of Evidence, upon which the Virginia Rules are based, it has been cited by our Supreme Court and by federal courts in more recent years and its dicta provides guidance to our analysis.

[6] *But see* Va. R. Evid. 2:412.

"transmut[ing]" that into evidence of character. *United States v. Green*, 324 F. Supp. 2d 311, 318 n.14 (D. Mass. 2004). Roach's trial counsel's statement that Roach had "never been accused of a sort of crime like this before ever" is exactly the type of reference to specific acts—or lack thereof—that is prohibited.

The evidence that Roach's trial counsel would have had to present to support the comments at issue would have to have included asking Roach whether he had ever been accused of a crime—a question which would have necessarily informed the jury of an "absence" of "specific acts," opening the door to the dangers of a jury judging whether the accused is guilty in this case based on the absence of being accused of this sort of crime in the past. As such, the information Roach's trial counsel proffered in his opening statement was inadmissible because it constituted evidence of conformity with a course of conduct. *See Chiles*, 12 Va. App. at 700; *Mostyn v. Commonwealth*, 14 Va. App. 920, 924 (1992).

> B. *The statements made by Roach's trial counsel were so prejudicial that they would likely remain in the minds of the jurors and influence them, and thus established a manifest necessity to declare a mistrial.*

Roach continues his argument by asserting that there existed no manifest necessity to declare a mistrial because the jury was already advised that opening statements were not to be considered as evidence. Because the statement at issue is not evidence, Roach contends, the statement stands far removed from forming the basis for a manifest necessity. Additionally, Roach argues that there existed a less severe alternative than declaring a mistrial, thereby negating any manifest necessity. Roach contends that, before declaring a mistrial, the court must consider "narrower alternatives" that are available to it. Roach notes that his trial counsel, during argument on the Commonwealth's motion for mistrial, asked the court to charge the jury with a curative instruction, essentially reminding the jury of the initial instruction given that nothing within the opening statements were to be considered as evidence.

If the prejudicial effect of an improper remark, question, or piece of evidence is too overwhelming for a cautionary instruction to cure, the declaration of a mistrial would not run afoul of a defendant's double jeopardy protections. *Hamer v. School Bd. of the City of Chesapeake*, 240 Va. 66, 75 (1990). Whether improper conduct of counsel is prejudicial "is basically a question of fact" to be determined considering each case's particular circumstances. *Lewis v. Commonwealth*, 211 Va. 80, 83 (1970). Our Court gives great deference to the trial court, which is best suited to answer the factual questions underlying discretionary decisions. *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019).

While "it is impossible to define all the circumstances [that] would render [a mistrial] proper," *Perez*, 22 U.S. (9 Wheat.) at 580, courts look to several factors that can aid in deciding whether cautionary instructions would cure improper conduct. Such factors include the relevance and content of the improper reference, whether it was deliberate or inadvertent, and its probable effect. *Lowe v. Cunningham*, 286 Va. 268, 273 (2004). Other factors include the identity of the person making the improper remark and its timing during trial. *See Dinitz*, 424 U.S. at 612 (Burger, C.J., concurring) ("it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict"). Furthermore, courts also consider how much attention an instruction might draw to inadmissible evidence. *See Stewart v. United States*, 366 U.S. 1, 10 (1961).

Roach's trial counsel's opening statement contained comments that constituted impermissible propensity evidence. A person described as "salt of the Earth" who "stays to himself" and who *has never before been accused of a crime of this kind* could be seen as having a "personality" inconsistent with the propensity to commit crimes based on both those character traits and the assertion that he has never been charged with a similar crime. Such an assertion of

the absence of prior charges invited the jury to infer that because Roach has never been charged with a crime of this sort before, surely he cannot be guilty of it in this instance. That is an unacceptable inference.

There is nothing in the record to indicate that Roach's trial counsel's statement was inadvertent. Conversely, Roach argues that the statement was "within the realm of acceptable trial strategy," conceding that the comment was not only not off-handed, but was an intentional strategy to persuade the jury of Roach's innocence. The comment's probable effect was such that it prejudiced the Commonwealth by virtue of its over-persuasive nature. Indeed, "inquiry [into specific criminal acts] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them . . . ." *Michelson*, 335 U.S. at 475-76 (footnote omitted). The trial court correctly perceived that there was no way that information this salient could be removed from consideration from the jury.

Additionally, the fact that Roach's attorney was the person who made the statement further underscores the prejudicial nature of the statement at issue. As Chief Justice Burger warned in *Dinitz*, 424 U.S. at 612, the authority of an officer of the court presenting the prejudicial statement gives it greater significance than if it came from a witness.

The fact that the information was given during opening statements adds to its problematic nature. Mentioning the lack of prior accusations during opening statements informs the jury of the absence of prior specific acts at a time and in a way that sidesteps testing the reliability of that statement with "adversarial [questioning] 'beat[ing] and bolt[ing] out the [t]ruth . . . .'" *Crawford v. Washington*, 541 U.S. 36, 61-62 (2004) (quoting Matthew Hale, *The History of the Common Law of England* 291 (4th ed. 1794)).[7]

---

[7] When addressing the court on this point, Roach's trial counsel phrased the possibility of the defendant testifying subjunctively, stating that he "may" be offering character evidence, instead of indicatively asserting that he would be calling Roach to the stand to testify on this

Finally, a curative instruction would likely have drawn additional attention to Roach's trial counsel's improper comment. Our Court "accord[s] the highest degree of respect to the trial judge's evaluation of the likelihood" that improper comments by attorneys affect the jurors' impartiality. *Washington*, 434 U.S. at 511. The trial court grappled with the benefit of a "living record [that] contains many guideposts to the truth . . . not in the printed record." *Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015).

As my dissenting colleague recognizes, there are cases in which the trial judge determines that a curative instruction is the appropriate solution in lieu of a mistrial. While it is well-established Virginia law that where a jury is given a curative instruction, the jury is presumed to follow that instruction, the dissent conflates that presumption with the initial discretionary decision made by the trial judge—whether the curative instruction is the appropriate remedy or not.

There is no presumption under Virginia law that the trial court is to provide a curative instruction as opposed to declaring a mistrial. Whether to declare a mistrial or to introduce a curative instruction is solely within the discretion of the trial court following an analysis conducted at the time the decision must be made. As the trial judge is the one who is closest to the dispute, who directly observes the error, who witnesses the impact of the error on the jury, and who anticipates its impact on the trial, it is the trial judge who is in the best position to factually find whether a mistrial is necessary. Thus, the trial court's determination that a mistrial is necessary will not be disturbed on appeal absent such a determination being plainly wrong.

point as a matter of fact. Still, however, there was no guarantee, even with an indicative assertion, that Roach would actually take the stand to testify to his counsel's opening statement. In fact, Roach did not end up testifying at trial. Indeed, referring to evidence that is inadmissible until the defendant himself waives his Fifth Amendment right "sandbag[s]" the prosecution when a defendant thereafter refuses to submit to cross examination. *Johnson v. State*, 143 A.3d 221, 232-33 (Md. Ct. Spec. App. 2016).

As this record does not reveal anything that would make it plainly wrong, the trial court's determination that telling the jury to disregard the statement would "only emphasize the improper message" must remain undisturbed. As other courts have noted, reviewing courts "should be especially reluctant to second-guess the judgment of the trial court . . . where . . . the conduct of the defendant's own lawyer causes a mistrial." *Colvin v. Sheets*, 598 F.3d 242, 255 (6th Cir. 2010). We agree. We find that there was no abuse of the trial court's discretion in finding that a manifest necessity existed to require a mistrial.

*II. The evidence was sufficient to establish lascivious intent to solicit sex from a minor.*

"[T]he relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (citation omitted).

Roach argues that the evidence was insufficient to demonstrate his lascivious intent, contending that (1) he had previously had an innocent relationship with the victim, (2) he had never sent messages of the sort before, (3) the conversation began innocuously, (4) he expressed concern that the victim was too young to have a boyfriend or sexual relations, and (5) his follow-up messages show that he was "just joking." Under our deferential standard of review, Roach's arguments fail.

In this case, a rational trier of fact could reasonably conclude, as the trial court did here, that the string of text messages introduced at trial established lascivious intent. Specifically, the wording of Roach's questions, asking questions of such a sensitive sexual nature, his admitted lack of intoxication at the time he sent the messages, and how he followed up to try to solicit an answer to his sexually charged questions could reasonably be found to be more than a "bizarre sense of humor."

Short of a confession, proving intent by direct evidence is very difficult. *Kelley v. Commonwealth*, 222 Va. 838, 841 (1981). The trial court here, however, was free to use its "common sense and common experience" to find that a rational jury could reasonably conclude that the defendant was acting on intent to procure a sexual encounter with a minor. *Gilland v. Commonwealth*, 184 Va. 223, 232 (1945) (citation omitted). As the trial court here noted, there was nothing "obscure" about the messages. The question, "do you want to have sex with me," was a question that "sort of st[ood] on its own feet" and "on its face taken in isolation" established intent. The trial court's findings that the discussion about his niece's boyfriend, her being on birth control, and the follow up message "no answer" suggested Roach had not posed the question rhetorically supported its intent finding. Just as the trial court found, a rational trier of fact could have similarly found that intending the string of sexually charged messages "humorously" would have entailed "a bizarre sense of humor." The record supports all these findings. There was sufficient evidence to find Roach possessed the requisite lascivious intent to be convicted under Code § 18.2-374.3(D).

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

- 16 -

Chaney, J., concurring in part, and dissenting in part.

I concur with the majority in affirming the trial court's denial of Roach's motion to strike the evidence, as the evidence was sufficient to prove the requisite lascivious intent for conviction. However, I dissent from the majority regarding the mistrial of the initial trial.

As the majority properly states, a trial court "has broad discretion in determining whether manifest necessity requires declaration of a mistrial." *Supra* at 7 (quoting *King v. Commonwealth*, 40 Va. App. 364, 373 (2003)). However, by "definition . . . a trial court abuses its discretion when it makes an error of law." *Curry v. Commonwealth*, 84 Va. App. 339, 349 (2025) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)). Based on this record, the trial court misinterpreted the law regarding jurors' presumed adherence to the court's curative instructions.

This Court follows the ancient and well-established "rule that error arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial." *Landeck v. Commonwealth*, 59 Va. App. 744, 756 (2012) (quoting *Black v. Commonwealth*, 223 Va. 277, 286 (1982)). "A judgment will not be reversed for the improper admission of evidence that a court subsequently directs a jury to disregard because juries are presumed to follow prompt, explicit, and curative instructions." *Beavers v. Commonwealth*, 245 Va. 268, 280 (1993). The practice of correcting improper statements by counsel has been considered "common and widely approved" for over a century. *See Washington & O.D.R. Co. v. Ward's Adm'r*, 119 Va. 334, 339 (1916) ("A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party.").

The rule requiring proof of "manifest abuse" or prejudice dates back over a century.  *See*

*Harris v. Commonwealth*, 133 Va. 700, 708 (1922) (citing *Ford v. State*, 34 Ark. 649 (1879);

*Combs v. State*, 75 Ind. 215 (1881); *Inman v. State*, 72 Ga. 269 (1884); *State v. Surles*, 23 S.E.

324 (N.C. 1895)).  Even assuming without deciding that Roach's trial counsel's opening

statement referred to inadmissible character evidence, the court abused its discretion by failing to

recognize the presumption that jurors will follow curative instructions when it denied Roach's

request for such an instruction.

During opening statements, Roach's counsel stated he was "a good man.  Salt of the

Earth sort of guy.  And he's never ever been accused of any sort of crime like this before ever."

After Roach's opening statement, the Commonwealth moved for a mistrial, arguing that this was

"not evidence that is admissible at the trial."  In response, Roach argued that the evidence *would*

be admissible at trial if he testified.  The circuit court responded, "I think he can probably answer

that question[, whether Roach had been accused of anything like this before]," but was troubled

that the reference was made in an opening statement.  Roach requested that the court issue a

curative instruction: "I think the Court can just . . . instruct them to remember your instruction

that whatever we said [in opening statements] was not evidence[.]"  *See Arrington v.*

*Commonwealth*, 10 Va. App. 446, 447 (1990) ("An opening statement is not evidence; its

purpose is 'merely to inform the jury of what counsel expects the evidence to be so that they may

better understand the evidence.'" (quoting *Fields v. Commonwealth*, 2 Va. App. 300, 307

(1986))).

The circuit court denied Roach's request for a curative instruction, holding that such an

instruction would "only emphasiz[e] to the jury the inadmissible evidence the Commonwealth

objected to.  There's no way . . . to unring the bell."

The court's stated holding, "There's no way . . . to unring the bell," reveals the court's misinterpretation of the presumption regarding curative instructions. Thus, the court abused its discretion by denying Roach's request for the instruction. The court's holding contradicts the presumption that juries follow curative instructions in the absence of evidence showing otherwise. *See, e.g.*, *Tizon v. Commonwealth*, 60 Va. App. 1, 14-15 (2012) ("Because the record reveals no reason to doubt the efficacy of the trial judge's curative instruction in this case, we reject Tizon's argument that the trial court erred by not declaring a mistrial."); *Schmitt v. Commonwealth*, 262 Va. 127, 147-48 (2001) ("It is well established that a judgment will not be reversed for a statement of counsel that the court promptly directs the jury to disregard unless there is a manifest probability that the improper comments were prejudicial to the defendant."); *Arrington*, 10 Va. App. at 447 ("Usually, a trial court may cure an improper statement by counsel without the necessity of granting a mistrial.").

In the absence of evidence overcoming the presumption, the presumption prevails. *See Mertz v. Sullivan*, 82 Va. App. 762, 790 (2024) ("The primary significance of a presumption is that it operates to shift to the opposing party the burden of producing evidence tending to rebut the presumption.") (citation modified); *Centra Health, Inc. v. Mullins*, 277 Va. 59, 81 (2009) ("A jury is presumed to follow the court's instructions, and an appellant who challenges a verdict bears the burden of rebutting that presumption."); *Stump v. Doe*, 250 Va. 57, 62 (1995) ("Since the court took prompt and appropriate action to remove the plaintiff's improper statement from jury consideration, we presume that the jury heeded the court's instruction."); *LaVasseur v. Commonwealth*, 225 Va. 564, 589 (1983) ("Unless the record shows the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given.").

Courts have issued such instructions, which we have held to overcome errors invited by counsel. *See, e.g.*, *Castillo v. Commonwealth*, 70 Va. App. 394, 445-46 (2019) ("Even if the

- 19 -

Commonwealth's attorney's statement could be construed as an improper comment indicating there was a burden on appellant to produce evidence, the jury was given a prompt cautionary instruction, and there is no indication that this comment was so impressive that it caused prejudice warranting a new trial."); *Livingston v. Commonwealth*, 21 Va. App. 621, 629 (1996) ("[A]lthough the Commonwealth's attorney referred to a fact not in evidence during closing argument, the trial judge immediately issued a broad cautionary instruction."); *Black v. Commonwealth*, 223 Va. 277, 286 (1982) ("[E]rror arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial."); *Lewis v. Commonwealth*, 211 Va. 80, 84 (1970) (finding no reversible error where the prosecution improperly disclosed the guilty plea of an accomplice where the trial court instructed the jury to disregard the disclosure).

This Court has affirmed the circuit court's decision to *not* grant a mistrial when the Commonwealth's attorney referred to evidence during their opening statement that was not admitted during the trial. *Arrington*, 10 Va. App. at 448-49. In *Arrington*, during their opening statement, the prosecutor told the jury that "the defendant had admitted to the police that he was with two others involved in the crimes on the day they occurred but denied that he was aware that they committed the crimes." *Id.* at 447.

This Court ruled that "where no prejudice results, a prosecutor's reference during opening statement to evidence which the prosecutor is unable to present at trial is not grounds for a mistrial if the prosecutor *believes in good faith* that the evidence will be available and admissible." *Id.* at 448 (emphasis added). As demonstrated on the record, Roach's counsel expressly had a good-faith belief that his opening statements would be admissible in the defense case-in-chief. Roach told the court, "I think if I were to put my client on the stand and he were to testify and I were to ask him that question, the Court would permit it to be answered. And

- 20 -

certainly they could cross on that." In response, the court affirmed Roach's good-faith belief by saying, "if you put him on the stand and [asked have] you ever been accused of anything like this, I think he can probably answer that question." Notwithstanding this, in requesting a curative jury instruction, Roach said, "I think the Court can just . . . instruct [the jury] to remember your instruction that whatever we said was not evidence."

There was no evidence on this record to rebut the presumption that jurors will follow the curative instruction, that the jury would disregard the court's instruction, or a manifest probability that the improper comments were prejudicial. Furthermore, the court was not prevented from promptly instructing the jury that opening statements were not evidence and are not to be considered. The availability of a curative instruction and the misinterpretation of the unrebutted presumption that jurors follow the instructions, renders the circuit court's denial of the prompt request for a curative instruction—that opening statements are not evidence—an abuse of discretion as a matter of law, resulting in the court erroneously finding a manifest necessity to declare a mistrial. Therefore, I respectfully dissent.